UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTHONY CAMPBELL,

                Plaintiff,

-against-

CORRECTION OFFICER HANSON, ET AL.,

                Defendants.

17-cv-1024 (ALC)

**OPINION AND ORDER**

---

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Anthony Campbell (hereinafter, "Plaintiff" or "Mr. Campbell") brings this suit against a number of New York City Department of Corrections employees including Captain Nee and Correction Officers Hanson, Bunch, Lin, Bryan-Shepp, Jeffries, and Alphonse pursuant to 42 U.S.C. § 1983.[1] Plaintiff alleges violations of his civil rights, particularly the use of excessive force by the named Defendants.

## PRODECURAL HISTORY

Mr. Campbell initiated this action on February 10, 2017. ECF Nos. 1-2. On April 21, 2017, the case was assigned to the undersigned. Following the filing of Plaintiff's Second Amended Complaint ("SAC") on October 19, 2017, the case followed two tracks – that of Defendants City of New York and New York City Health and Hospitals (collectively, the "City Defendants") and that of the above-named individual Department of Corrections Defendants (collectively, the "Individual Defendants"). ECF No. 32 ("SAC").

---

[1] Upon filing, Plaintiff's Complaint also named as Defendants the Department of Correction of New York City, the Probe Team for MDC, New York City Health and Hospitals, and the City of New York. The case against the Department of Corrections of New York City was terminated on April 21, 2017. The case against the Probe Team for MDC was terminated on July 20, 2017. On June 29, 2018, the Court granted Defendants' Motion to Dismiss as to the City of New York and New York City Health and Hospitals. *See* ECF No. 74.

COPIES MAILED

The City Defendants filed a Motion to Dismiss on November 30, 2018, along with supporting documents. ECF Nos. 38-41. On April 4, 2018, the Court ordered Mr. Campbell to Show Cause as to why the City Defendants' Motion to Dismiss should not be deemed unopposed. ECF No. 61. Pursuant to the Order to Show Cause, Plaintiff filed a Response on May 22, 2018. ECF No. 66. Shortly thereafter, the City Defendants filed a Reply in support of their Motion. ECF No. 71. On June 29, 2018, the Court granted the City Defendants' Motion to Dismiss, thus dismissing all claims against the City Defendants as well as any and all state claims Plaintiff intended to assert. ECF No. 74. The Court's Order left only Plaintiff's excessive force claim against the Individual Defendants. *Id.*

Meanwhile, on December 29, 2018, the Individual Defendants (hereinafter, "Defendants") answered Plaintiff's SAC. ECF No. 50. The Parties engaged in extensive discovery under the guidance of Magistrate Judge Gabriel W. Gorenstein. Following this Court's Opinion on the City Defendant's Motion to Dismiss, and pursuant to an Order from the Court, Defendants filed a Letter Motion requesting a pre-motion conference in anticipation of a motion for summary judgment. ECF Nos. 72, 74-75. On October 14, 2018, the Court granted Defendants leave to file their Motion. ECF No. 76. On October 11, 2018, Defendants filed their Motion. ECF Nos. 79-84. Having received no opposition to the Motion, on November 30, 2018, the Court ordered Plaintiff to Show Cause as to why Defendants' Motion should not be deemed unopposed. ECF No. 86. To date, the Court has yet to receive any submission from Plaintiff.

Thus, Defendants' Motion is deemed unopposed and fully briefed. After careful consideration, Defendants' Motion for Summary Judgment is hereby **GRANTED**.

## BACKGROUND

Mr. Campbell was incarcerated in the New York City Department of Correction's ("DOC") Manhattan Detention Center ("MDC") in January of 2016. Defs.' R. 56.1 Stmt. ¶ 1 ("Defs' 56.1"). On or around January 25, 2016, Plaintiff was transferred from a maximum classification housing unit to medium classification housing unit 6 East in MDC. SAC p. 4. Defendant Correction Officer ("C.O.") Hanson was assigned to housing unit 6 East. Defs' 56.1 ¶ 2. It is undisputed that on January 25, 2016, C.O. Hanson responded to an altercation involving Plaintiff. *Id.* ¶ 3; Reilly Decl. Ex. B, Campbell Dep. 44:11-15, ECF No. 81-2 ("Campbell Dep."). The number of inmates involved, however, is in dispute. Defendants claim that the altercation involved one other inmate and occurred at 2:43 p.m. Defs' 56.1 ¶ 3; Reilly Decl. Ex. D, Use of Force File p. 10, ECF No. 81-4 ("UOF"). Plaintiff claims that he was "jumped" by five or six inmates. Campbell Dep. 44:11-15. The number of inmates involved aside, it is undisputed that C.O. Hanson issued verbal orders to stop the fight and cautioned the inmates that he would use oleoresin capsicum ("OC") spray if the inmates failed to heed his warnings. Defs' 56.1 ¶ 4; Campbell Dep. 47:15-25. Defendants allege that the other inmate ceased fighting, but Plaintiff did not. UOF p. 12. C.O. Hanson then utilized his OC spray directly on Plaintiff, and "the chemical agent achieved its desired effect terminating the incident." *Id.*; Defs' 56.1 ¶ 5. Plaintiff alleges that C.O. Hanson utilized the OC spray twice – the second application targeting Plaintiff specifically. Campbell Dep. 48:19-49:2.

Following the altercation, Plaintiff was removed from the dayroom by C.O. Hanson. Defs' 56.1 ¶ 7; Campbell Dep. 49:8-16. While Plaintiff was being escorted out, another inmate threw a chair at Plaintiff, hitting both Plaintiff and C.O. Hanson. *Id.*; Campbell Dep. 49:20-50:12. C.O. Hanson activated his personal body alarm, which triggered the response of a probe

team. Defs' 56.1 ¶ 8; Campbell Dep. 50:9-12. The probe team that responded to the alarm consisted of Captain Nee and Correction Officers Jeffries, Bryan-Shepp, Bunch, Alphonse, and Lin. Defs' 56.1 ¶ 9; UOF p. 11. It is undisputed that the probe team handcuffed Plaintiff upon arrival. Defs' 56.1 ¶ 11; Campbell Dep. 50:19-21. While Defendants claim that Mr. Campbell was cuffed due to his non-compliance and then transported to intake for decontamination, Plaintiff alleges that the probe team started kicking, punching, and beating him with batons. Defs' 56.1 ¶ 11; UOF p. 15; Campbell Dep. 53:1-24. Plaintiff alleges that the beating occurred because the probe team thought Plaintiff was struggling, but he was allegedly in pain because the handcuffs were too tight. Campbell Dep. 56:7-10. However, at no point did Plaintiff tell the probe team that his handcuffs were too tight. Defs' 56.1 ¶ 12; Campbell Dep. 56:20-57:7.

Medical records indicate that Mr. Campbell was taken to the clinic following the altercation on January 25, 2016 at 4:48 p.m. Defs' 56.1 ¶ 14; Reilly Decl. Ex. F, Medical Records p. 23, ECF No. 81-6 ("Medical Records"). Notes from his medical examination indicate that he complained of pain in his low back, left hand, and left elbow.[2] Defs' 56.1 ¶ 15; Medical Records p. 23. Doctors discussed sending Plaintiff to the hospital, however a final diagnosis indicated that there was no need as there was no indication of any abrasions, hematoma, swelling, or bleeding. Def's 56.1 ¶ 16; Medical Records p. 25; UOF p. 5. Plaintiff was prescribed ibuprofen, scheduled for x-rays, and then sent back to intake. Defs' 56.1 ¶ 17; Medical Records pp. 24-25. On January 28, 2016, after a subsequent investigation of the incident, Mr. Campbell was served with a Report and Notice of Infraction which charged him with assault and fighting

---

[2] Medical records also indicate that Plaintiff had been suffering from lower back pain for many years. Medical Records p. 20. In addition, Plaintiff complained of hip pain, but he indicated that his hip pain was due to "severe" arthritis. Campbell Dep 85:12-23. Regarding Plaintiff's hand pain, Plaintiff indicated that while his hand may have been numb as a result of the handcuffs being too tight, he suffered no lasting or long-term pain. Campbell Dep. 97:7-25.

4

as well as refusing to obey a direct order. Defs' 56.1 ¶ 18; Campbell Dep. 96:11-97:4; UOF p. 38-40.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, summary judgment is proper where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citations omitted). There is no issue of material fact where the facts are irrelevant to the disposition of the matter. *See Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail & Rigging, LLC*, 967 F. Supp. 2d 756, 761 (S.D.N.Y. 2013); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (holding that a fact is material if it would "affect the outcome of the suit under governing law"). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility nor may they decide between conflicting versions of events, because those matters are reserved for the jury. *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir.

2005). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Id.* (quoting *Anderson*, 477 U.S. at 252).

Where, as in this case, a motion for summary judgment is unopposed, the same standard of review applies. *See Waller v. Muchnick, Golieb & Golieb, P.C.*, 523 Fed.Appx. 55, 57 (2d Cir. 2013) (citing *Vermont Teddy Bear Co v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). If the movant fails to meet their burden of production, "summary judgment must be denied even if no opposing evidentiary matter is presented." *Vermont Teddy Bear*, 373 F.3d at 244 (citing *Giannullo v. City of New York*, 322 F.3d 139, 141 (2d Cir. 2003)). Further, in determining whether a movant has met their burden, a court may not exclusively rely on a party's Rule 56.1 Statement. *Id.* The evidence in the record must support the factual assertion. *Id.*

## DISCUSSION

Plaintiff's Complaint could be liberally construed to give rise to three separate instances of excessive force: (1) C.O. Hanson's use of OC spray; (2) the probe team's handcuffing of Mr. Campbell; and (3) the two alleged beatings of Mr. Campbell by the probe team.

### I. Excessive Force

42 U.S.C. § 1983 "protects a pretrial detainee from the use of excessive force that amounts to punishment."[3] *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015); *Portillo v. Webb*, 2017 WL 4570374, *3 (S.D.N.Y. Oct. 11, 2017) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). When force is "purposefully or knowingly used against a pretrial detainee, the detainee must show only that the force was objectively unreasonable." *Portillo*,

---

[3] "Courts may decide excessive force claims, including claims arising from allegations of excessively tight handcuffs, on motions for summary judgment." *Morocho v. New York City*, 2015 WL 4619517, *8 (S.D.N.Y. July 31, 2015) (citing *Matthews v. City of New York*, 889 F.Supp.2d 418, 442 (E.D.N.Y. 2012)).

2017 WL 4570374, *4 (quoting *Kingsley*, 135 S.Ct. at 2473). "Objective reasonableness turns on the facts and circumstances of each particular case," and courts may consider factors such as (1) the force used in relation to the need for force, (2) a plaintiff's resulting injuries, (3) efforts made by an officer to limit the amount of force applied, (4) the severity of the situation at hand, (5) the threat reasonably perceived by an officer or officers, (6) and the resistance level of a plaintiff. *Kingsley*, 135 S.Ct. at 2473.

### a. C.O. Hanson's Use of OC Spray does Not Constitute Excessive Force

When analyzing the injury component of an excessive force claim, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline" rather than to "maliciously and sadistically [] cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Conclusory allegations, in and of themselves, that an excessive amount of OC spray was utilized during an altercation is insufficient to create a triable issue of fact.[4] *See Roach v. Okun*, 2017 WL 3638464, *5 (N.D.N.Y. June 6, 2017).

There is no dispute that C.O. Hanson discharged OC spray in an effort to break up the altercation on January 25, 2016. UOF p.12; Defs' 56.1 ¶ 5; Campbell Dep. 48:19-49:2. Plaintiff states that he heard C.O. Hanson issue a verbal warning indicating that C.O. Hanson was going to deploy OC spray if the inmates didn't cease their activity. Campbell Dep. 47:15-25. Plaintiff then states that both he and other inmates were sprayed with OC. *Id.* at 48:10-19:2. Accepting Plaintiff's allegations as true, at no point does either Plaintiff or the evidence indicate that any OC use came after the altercation had ceased. Further, Plaintiff does not indicate that he obeyed C.O. Hanson's warnings prior to the use of OC spray. Plaintiff's allegations consist of claims

---

[4] Plaintiff makes no allegation that he was handcuffed or that he had ceased resisting prior to any application of OC. *See Roach v. Okun*, 2017 WL 3638464, *4 (N.D.N.Y. June 6, 2017) (citing *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010); *Cabaniss v. City of Riverside*, 231 Fed.Appx. 407, 413 (6th Cir. 2007)).

7

that he, an individual involved in the altercation, was administered OC by an officer who warned that OC spray would be utilized should the fight not cease. *See* Campbell Dep. Plaintiff's allegations, in and of themselves, are not sufficient to indicate that C.O. Hanson's chosen use of force was unreasonable. Nor is there evidence indicating that the OC spray was deployed in an effort to cause harm rather than "in a good faith effort to maintain and restore discipline." *Wilkins*, 559 U.S. at 37. Thus, Plaintiff has failed to demonstrate a genuine issue of material fact pertaining to the use of OC spray.

### b. The Allegations Pertaining to the Use of Tightened Handcuffs are Not Sufficient to Support an Excessive Force Claim

Unnecessary handcuffing can give rise to a § 1983 excessive force claim "where plaintiff suffers injury as a result." *Lloyd v. City of New York*, 246 F.Supp.3d 704, 724 (S.D.N.Y. 2017) (citing *Usavage v. Port Auth. of N.Y. and N.J.*, 932 F.Supp.2d 575, 592 (S.D.N.Y. 2013)). Although handcuffs must be reasonably tight to be effective, an alleged injury more severe than temporary bruising or discomfort may be sufficient to constitute excessive force. *Id.*; *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F.Supp.2d 459, 468 (S.D.N.Y. 2008) (citing *Kerman v. City of New York*, 261 F.3d 229, 239-40 (2d Cir. 2001)). "In evaluating the reasonableness of handcuffing, a [c]ourt is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *White v. City of New York*, 2019 WL 1428438, *10 (S.D.N.Y. March 29, 2019) (quoting *Lynch*, 567 F.Supp.2d at 468). Allegations of "brief numbness" are not sufficient to sustain an excessive force claim. *Hamlett v. Town of Greenburgh*, 2007 WL 119291, *3 (S.D.N.Y. Jan. 17, 2007).

Here, while Plaintiff alleges that his handcuffs were too tight upon his removal from the altercation, his allegations alone are insufficient to support his excessive force claim. In addition,

8

the evidence speaks to the contrary. Campbell Dep. 56:7-10. First, Plaintiff states that at no point did he indicate to the guards that his handcuffs were too tight. *Id.* at 56:20-57:7. Second, regarding the degree of the injury, Plaintiff's allegations support no more than a *de minimus* injury. *Id.* at 97:5-25. While lasting effects and severe injury are not required, Plaintiff complains of no specific injury other than general soreness or numbness. *Id.* Thus, Plaintiff's allegations are insufficient to support his claim for excessive force pertaining to the handcuffing.

### c. The Evidence Supporting Plaintiff's Claims of Excessive Force Regarding the Alleged Beatings by the Probe Team is Insufficient

As stated, a court should not weigh evidence or assess the credibility of witnesses on a motion for summary judgment. *See Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *U.S. v. Rem*, 38 F.3d 634 (2d Cir. 1994). However, to defeat summary judgment, "nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts." *Jeffreys*, 426 F.3d at 544. "A nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful." *Id.* (quoting *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998)). While, in certain instances, a plaintiff may exclusively rely on her own testimony, that testimony must be sufficient enough for a reasonable juror to issue a verdict in her favor. *See id.* Absent corroborating evidence, testimony that is inconsistent and contradictory may be insufficient to survive summary judgment. *Id.*; *see Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460, 468-71 (S.D.N.Y. 1998).

Here, the entirety of the evidence supporting Plaintiff's allegations pertaining to his two alleged beatings at the hands of the probe team is contained in his deposition and Complaint. Regarding the first alleged beating, Plaintiff claims that after he got pulled away from the inmate attack he "was beaten ... with sticks". Campbell Dep. 53:1-6. Plaintiff states that "there were kicks; there were punches and sticks. They were just hitting me." *Id.* 53:8-10. Plaintiff alleges

that the beating lasted for two minutes, and that he was hit in his back, hip, hand, and legs. *Id.* 53:11-24. After the alleged beating, Plaintiff was taken to medical. Medical Records p. 23. Medical Records indicate that Plaintiff complained of lower back pain, left elbow pain, and hand pain. Medical Records p. 23; UOF p. 5. The examining physician found no abrasions, no hematoma, no swelling, and no bleeding. UOF p. 5. The medical examiner determined there was no need to send Plaintiff to the hospital, and discharged Plaintiff after giving him ibuprofen. Medical Records p. 23-25. In his deposition, Plaintiff did not state what injuries stemmed from his fight with the other inmate and what injuries, if any, stemmed from or were exacerbated by the alleged beating by the probe team. Campbell Dep. 46:1-15. Additionally, Plaintiff does not indicate any previous injuries or conditions that were made worse by the alleged beating by the probe team. Regarding the second alleged beating, Plaintiff's sole evidence is a sentence in his Complaint that states that "[t]he Probe Team rolled [him] back in "Pen 5" where they continued to assault me. They left me handcuff[ed] and unconscious." Compl. p. 8.

In this case, Plaintiff has not done enough, as the non-moving party, to demonstrate that any dispute of material fact is, in fact, genuine. The medical records do not support Plaintiff's testimony, and Plaintiff has provided the Court with no additional information or evidence which could lead a reasonable juror to return a verdict in Plaintiff's favor. Plaintiff had multiple opportunities to provide additional testimony and offer more factual information regarding the alleged uses of excessive force. ECF No. 86. Without ruling on Plaintiff's credibility, Plaintiff simply has not provided this Court with sufficient evidence to take this case to a jury. Here, Plaintiff's word alone is not enough to create a genuine dispute of material fact, particularly when that word is contradicted by medical documents.

## CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment is hereby **GRANTED**.

**SO ORDERED.**

Dated: **June 27, 2019**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**